UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| THOMAS KING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11-cr-00121-JAW |
| | ) | 1:14-cv-00446-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Thomas King moves, pursuant to 28 U.S.C. §2255, to vacate, set aside or correct his sentence.  (Motion, ECF Nos. 123, 123-1.)[1]  Petitioner pled guilty to the possession of a computer that contained child pornography, which Petitioner had produced by surreptitiously videotaping his 12-year old step-daughter in a family bathroom.  (Judgment, ECF No. 102; Prosecution Version, ECF No. 22 at 2-3.)  *See* 18 U.S.C. § 2252A(a)(5)(B), (b)(2).[2]

The Court sentenced Petitioner to a prison term of 72 months, followed by five years of supervised release.  (*Id.*)  At sentencing, because the Court found that Petitioner had falsely denied relevant conduct, namely, that he had possessed CDs containing child pornography in addition to the pornography that was the subject of the charge, the Court denied Petitioner a reduction in the offense level for acceptance of responsibility, pursuant to U.S.S.G. §3 E1.1.  Petitioner appealed from the sentence, and argued that the sentence was substantively unreasonable; the First Circuit affirmed the sentence.  *United States v. King*, 741 F.3d 305 (1st Cir. 2014).

---

[1] Because the supporting facts for Petitioner's motion are set forth entirely within ECF No. 123-1, references to the motion are to ECF No. 123-1 unless otherwise indicated.

[2] The definition of "child pornography" is set forth in 18 U.S.C. §2256(8).

In Petitioner's section 2255 motion, he claims ineffective assistance of counsel, citing counsel's failure to argue at sentencing that the child pornography on the CDs was not relevant conduct for purposes of determining whether Petitioner had accepted responsibility for the offense for which he was convicted.   The Government moved for summary dismissal of the motion. (Response, ECF No. 133.)

After a review of Petitioner's motion and the Government's request for dismissal, the recommendation is that the Court grant the Government's request and dismiss Petitioner's motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted in July 2011 on a single count for the possession of a computer that contained child pornography.   (Indictment, ECF No. 1.)   The following facts are from the prosecution version, which Petitioner admitted in his plea hearing was true.   (Plea Tr., ECF No. 114 at 19.)

In approximately January 2009, Petitioner's then wife found a box for a clock that contained a hidden camera, and she confirmed that the clock was located on a window sill in a bathroom generally used by Petitioner's step-daughter and Petitioner's children in the home of Petitioner and his then wife.[3]  (Prosecution Version at 1-2.)  Petitioner initially admitted to her that he had purchased the clock camera and placed it in the bathroom, but he denied that he activated it.  (*Id.*)

---

[3] According to the revised presentence investigation report, the couple were in the process of getting a divorce.  For simplicity, and because the date of the divorce does not appear to be in the record, the Court refers to Petitioner's wife as his then wife, although that may not accurately describe the status of the relationship at any given point. (Prosecution Version, ECF No. 22 at 1.)

On January 25, 2011, a detective with the Maine State Police Computer Crimes Unit interviewed Petitioner at his home in Ellsworth, Maine.[4]  (*Id.* at 1.)  During that interview, Petitioner admitted that in approximately January 2009, he purchased the clock camera and placed it in the bathroom generally used by his step-daughter, but he denied that he activated it.  (*Id.* at 1-2.)  He gave permission to a detective to take his desktop and laptop computers for forensic review.  (*Id.* at 2.)  A forensic analyst found in the allocated, or undeleted, portion of the hard drive of the desktop computer still images and two videos of a child later confirmed to be Petitioner's step-daughter.  (*Id.*)  The camera angle on the video was consistent with a window sill placement of the clock camera.  (*Id.*)  The forensic analyst also found that one of the two videos on the desktop was also on the hard drive of the laptop computer.  (*Id.*)

In an interview on January 26, 2011, Petitioner confessed that he had purchased the clock camera, placed it in the bathroom that the step-daughter used, downloaded the clock camera software to his desktop computer, and downloaded the images taken by the clock camera to his desktop computer.  (*Id.* at 2-3.)  Petitioner admitted that he had viewed the videos of the child and that he had masturbated while watching the videos.  (*Id.* at 3.)  Petitioner was indicted and arrested in July 2011.[5]  (Indictment, ECF No. 1; Arrest Warrant Return, ECF No. 8.)

---

[4] In an affidavit accompanying Petitioner's reply, he asserts that he moved out of the family residence in approximately September 2010, and later that year his then wife changed the locks and obtained an order of protection from abuse against him.  (Affidavit, ECF No. 138-1.)

[5] The indictment alleges that Petitioner's illegal possession of child pornography occurred in January 2011.  (Indictment, ECF No. 1 at 1.)  Petitioner's section 2255 motion also asserts that the offense conduct occurred in that year.  (Motion at 12.)  However, Petitioner's reply states that his motion was incorrect as to the date, and that the offense took place in January 2009.  (Reply, ECF No. 138 at 2 & n.3.)  Petitioner's reply is consistent with the prosecution version, which states that Petitioner's then wife discovered the clock camera box in approximately January 2009.  (Prosecution Version at 1-2.)

At a change of plea hearing in October 2011, the Court found that Petitioner entered his guilty plea knowingly and voluntarily. The Court thus accepted the guilty plea. (Plea Tr. at 22-23.)

Petitioner argued in his sentencing memorandum, filed in February 2012, that the sentencing guidelines overstated the seriousness of the offense because the offense did not involve trafficking or trading of images, and because the images did not portray a sex offense against the victim. (Petitioner's Sentencing Memorandum, ECF No. 55 at 3-5.) Petitioner maintained that the offense, although reprehensible, was more in the nature of an invasion of privacy, in which the harm is embarrassment and betrayal, and not a sexual act upon a child. (*Id.* at 8.) Petitioner argued against the enhancements discussed in the revised presentence investigation report, including the enhancement of two levels for the use of a computer, pursuant to U.S.S.G. § 2G2.2(b)(6); five levels for a pattern of activity involving sexual abuse or exploitation of a minor, pursuant to section 2G2.2(b)(5); and three levels for the number of images, pursuant to section 2G2.2(b)(7)(B). (*Id.* at 5-8.) In support of his argument, on two occasions, Petitioner asserted in his sentencing memorandum that he had no other collection of child pornography. (*Id.* at 5, 8.)[6]

The Government maintained that a reduction for acceptance of responsibility should not apply given Petitioner's "continued minimization of both the egregiousness of his crime and the trauma he has caused this victim." (Government's Sentencing Memorandum, ECF No. 59 at 1, 5-8.) The Government argued in favor of each of the enhancements (*Id.* at 3-5.), and recommended a sentence at the high end of the guidelines range. (*Id.* at 1.)

---

[6] Petitioner stated, as part of his argument that the sentencing guidelines overstated the seriousness of the offense: "There was no other child pornography beyond the possession of the three videos cited in the [presentence investigation report]." (Petitioner's Sentencing Memorandum, ECF No. 55 at 5.) Petitioner stated, as part of his argument against an enhancement for the number of images: "There are no other collections of child pornography." (*Id.* at 8.)

The Probation Office submitted a second revised presentence investigation report in July 2012, *i.e.*, several months after the parties' sentencing memoranda were filed.  The report states: "Due to the discovery of additional materials after the disclosure of the presentence report, the report was revised to include the information contained in paragraph 10A.  The Probation Office wishes to preserve a possible objection to this information by the defendant."  Paragraph 10A of the report states that in May 2012, the Maine State Police Computer Crime Lab analyzed twenty-two CDs that Petitioner's then wife discovered in the home that she had previously shared with Petitioner.  According to the report, the forensic analyst found that the CDs contained multiple images of child pornography.  Despite the discovery of the images on the CDs, the Probation Office discussed a three-point reduction for Petitioner's acceptance of responsibility.

Petitioner's sentencing hearing was held in August 2012.  (Sentencing Tr., ECF No. 116 at 1.)  At the hearing, Petitioner did not object to the second revised presentence investigation report.[7] (*Id.* at 5-6.)  The Court noted that the Government had provided images from CDs found in the garage of Petitioner's former home; some of the images were not pornographic, some consisted of adult pornography, and 16 of the images consisted of child pornography.  (*Id.* at 12-13.)  Petitioner did not object to the introduction under seal of four CDs containing the child pornography.  (*Id.* at 13.)

At the sentencing hearing, Petitioner testified that in 2004 and/or 2005, he downloaded child pornography from the Internet, as he was collecting adult pornography from the Internet and

---

[7] At the sentencing hearing, Petitioner initially raised an objection to paragraph 8 of the second revised presentence investigation report.  (Sentencing Tr., ECF No. 116 at 5-6.)  Paragraph 8 contained statements to investigators by the victim of the offense of conviction.  The Court asked Petitioner for a clarification about his objection and noted that while Petitioner argued that the victim's statement was not true, he did not contend that the victim did not make the statement.  (*Id.*)  At a presentencing conference held in February 2012, the Court struck paragraph 9 of the revised presentence investigation report upon the agreement of the parties, because the Probation Office was not able to attribute the material described in that paragraph to Petitioner.  (Presentence Conference Tr., ECF No. 115 at 5.)

gathering various non-pornographic images from other sources, which images included family photographs.  (*Id.* at 19-27.)  Petitioner acknowledged the following: that he had amassed the collection of pornography by obtaining photos from various profiles of persons who posted pictures, that he downloaded the photos in groups, that he placed them in the "my pictures" folder of his desktop hard drive, and that he burned the images onto CDs.  (*Id.* at 19-26.)  He testified that he did not review the pornography on the CDs because he was "finding more on the Internet." (*Id.* at 20-22.)  On cross-examination, Petitioner testified that he downloaded Internet-derived images "numerous" times, and that he was not aware that approximately twenty of the images on the CDs were of the same child.[8]  (*Id.* at 23-24.)  Counsel represented, and the Government did not object to the representation, that the child pornography comprised somewhat less than two percent of the images on the CDs.  (*Id.* at 21.)  In argument, counsel characterized Petitioner's testimony as follows: "[W]hat [Petitioner] has said here is he didn't knowingly download it."  (*Id.* at 48.)

Petitioner's computer technician and forensics expert, who reviewed the CDs, explained that downloading files from the Internet onto the computer is an action distinct from and unrelated to burning the files from the computer onto a CD.  (*Id.* at 39.)  He also testified that depending on the Petitioner's computer settings, it would have been possible to download groups of photographs that Petitioner found on the Internet without looking at the content of the photos.  (*Id.* at 31-33.)  He testified that unless the computer settings had been changed, the photographs would have been stored in the "my pictures" section of the hard drive; the expert did not know whether Petitioner's computer settings were set to the default setting.  (*Id.* at 31, 38; 43-44.)  Petitioner's expert further

---

[8] The Court found that a significant amount of the non-pornographic images on the CDs were of young teenage girls. (Sentencing Tr. at 53.)

testified that the question of whether certain images had been downloaded individually could be determined with a more thorough investigation.  (*Id.* at 37-38, 44.) [9]

The Court calculated the sentence contemplated by the advisory guidelines as follows: the base offense level of 18, under U.S.S.G. § 2G2.2(a)(1), to which three enhancements were added: two levels for use of a computer, under section 2G2.2(b)(6); five levels for a pattern of abuse or exploitation, under section 2G2.2(b)(5); and three levels because the offense involved at least 150 images but fewer than 300 images, under section 2G2.2(b)(7)(B).[10]  (*Id.* at 56.)

In considering whether to apply a reduction in the offense level for Petitioner's acceptance of responsibility, the Court discussed Petitioner's collection of child pornography downloaded from the Internet.  (*Id.* at 16-17.)  The Court noted:

> I realize his position is that he did not intentionally collect the child pornography - - but if I come to the conclusion that that is inaccurate, that the government has proven it more likely than not that he did, in fact, collect the child pornography, then he has, it seems to me, falsely denied relevant conduct.

(*Id.*)  Counsel responded: "I'm aware of that, Your Honor."  (*Id.* at 17.)  Counsel argued that Petitioner was unaware that he was downloading child pornography.  (*Id.* at 46-48.)

For several reasons, the Court found it "more likely than not the defendant knew that there were images of child pornography on the CDs that he burned," and, therefore, the Court declined to apply a three-level reduction for acceptance of responsibility.  (*Id.* at 53-56.)  The Court found

---

[9] Petitioner's expert also testified that he believed all of the CDs at issue were CR-Rs, otherwise known as "write-once" CDs, and he was not aware of a method to add files to a CD-R on which files had been burned, unless certain software is used.  (*Id.* at 39-40, 45.)  The expert believed that because two of the CDs had completely different images on them, it is likely that all of the images from the "my pictures" folder were burned at once onto the CD, and then the "my pictures" folder was deleted before the next CD was burned.  (*Id.* at 41-42.)  The expert testified that if the pictures were grouped in the "my pictures" folder by date downloaded from the Internet or by the name of the file, and a non-pornographic picture was downloaded individually on a date between the dates of other downloaded batches of files, or placed into a file under its own name, a non-pornographic picture might appear amidst the pornographic ones, as was the case with the images on the CDs at issue.  (*Id.* at 42-43.)

[10] Under the sentencing guidelines, each video equates to 75 images.  *See* U.S.S.G. § 2G2.2, Application Note 7.  The Court noted that the number of images is "a very rough proxy for seriousness" of the offense.  (Sentencing Tr. at 14.)

that (1) there was a significant amount of non-pornographic content on the CDs of girls about the same age as the victim of Petitioner's videotaping; (2) there were no images of babies, infants, or very young children, thereby reflecting that Petitioner intentionally downloaded images of girls around the victim's age; (3) Petitioner created four CDs, all of which contained child pornography, and Petitioner likely was not mistaken on four occasions; and (4) one burns a CD to refer to it in the future, and, therefore, Petitioner likely intended to refer to the CDs in the future, particularly given that the CDs also contained family photographs and other non-pornographic material "that any person would want to save and look at again." (*Id.* at 53-54.)

The Court calculated the total offense level to be 28, and determined that Petitioner's criminal history was category I, based on the absence of any prior criminal record. (*Id.* at 56.) *King*, 741 F.3d at 307. A total offense level of 28, combined with a criminal history category of I, yielded an applicable guideline range of 78 to 97 months. (Sentencing Tr. at 56.) The Court then considered each of the factors set forth in 18 U.S.C. §3553(a), and focused particularly on Petitioner's history and characteristics and the nature and circumstances of the offense. (*Id.* at 74.) The Court considered the age of the victim, the egregious invasion of the victim's privacy, and the betrayal of trust. (*Id.* at 77-79.) The Court then imposed a below-guidelines prison term of 72 months, followed by a term of five years of supervised release. (*Id.* at 82.) Counsel objected to the denial of a reduction for acceptance of responsibility and to the enhancements for the use of a computer and the number of images, but counsel did not argue that the Court should not have considered Petitioner's possession of the CDs as relevant conduct in assessing Petitioner's acceptance of responsibility. (*Id.* at 57-58.)

On Petitioner's direct appeal from the sentence, Petitioner challenged the substantive reasonableness of the sentence, "due mainly to the combined effect of" the enhancements for use

of a computer and for the number of images. *King*, 741 F.3d at 307. In its January 2014 opinion, the First Circuit rejected Petitioner's argument that a reviewing court could "look at two enhancements to the exclusion of everything else" in the sentencing calculus. *Id.* at 309. Rather, the Court observed:

> Sentencing requires a broader focus because "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle": that a sentencing court ought "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."

*Id.* at 309 (quoting *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (quoting 18 U.S.C. § 3553(a))). The First Circuit concluded that the Court "examined the totality of the circumstances, appropriately treated the various guideline provisions as rough proxies, fashioned a sentence that responded to the nature and circumstances of the offense, and gave a plausible reason for the sentence." *Id.* The First Circuit noted: "It is a rare below-the-range sentence that will prove vulnerable to a defendant's claim of substantive unreasonableness." *Id.* at 310. Finally, the First Circuit declined to consider an ineffective-assistance claim that Petitioner had included in his reply brief in the direct appeal, although it noted that Petitioner may pursue a claim under section 2255. *Id.* at 310 & n. 3. Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.

Petitioner's section 2255 motion was timely filed in November 2014.

## II.   DISCUSSION

### A.  Legal Standard for Claims of Ineffective Assistance of Counsel

A person may move to vacate a sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the

maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[11]  Here, Petitioner alleges ineffective assistance of counsel. Because his right to counsel is guaranteed by the Sixth Amendment, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief.  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).  A court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings thereon without convening an additional hearing."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").  The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests.  *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).  The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges

---

[11] Title 28 U.S.C. § 2255(a) states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

to an accused an effective defense, not necessarily a perfect defense or a successful defense.'"
*Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38
F.3d 1, 8 (1st Cir. 1994)).  The issue is whether counsel's performance was "'within the wide range
of reasonable professional assistance' that a competent criminal defense counsel could provide
under 'prevailing professional norms.'"  *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at
688-89).

   In reviewing claims of ineffective assistance of counsel, courts should be mindful that
"'[c]ounsel is not required to waste the court's time with futile or frivolous motions.'"  *United
States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (quoting *United States v. Wright*, 573 F.2d 681, 684
(1st Cir. 1978)); *see Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the
petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective
assistance in failing to press the claims at trial or on appeal must also fail.")

   A district court that reviews claims of ineffective assistance of counsel is not required to
address both prongs of the test, because a failure to meet either prong is fatal to the claim.
*Strickland*, 466 U.S. at 697.  In addition, "[e]videntiary hearings on § 2255 petitions are the
exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an
evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition
(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the
alleged facts by the files and records of the case.'"  *Moreno-Morales v. United States*, 334 F.3d
140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

**B. The Sentencing Guidelines Provisions Regarding Acceptance of Responsibility and Relevant Conduct**

   Several sentencing guidelines sections inform whether a false denial of certain conduct
should cause a court not to reduce the offense level for acceptance of responsibility.  Section 3E1.1

of the guidelines provides that a sentencing court may reduce the offense level if the defendant has accepted responsibility for the offense. "The burden of proving that he accepted responsibility rests squarely with the defendant." *United States v. Deppe*, 509 F.3d 54, 60 (1st Cir. 2007).

Section 3E1.1 states:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

In this case, Petitioner argues that he should have received a two-level decrease under section 3E1.1(a). (Motion at 13.)

The commentary that accompanies Section 3E1.1 addresses the factors that a court may consider, including "additional relevant conduct." U.S.S.G. § 3E1.1, Application Note 1. Application Note 1 states in pertinent part:

In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any ***additional relevant conduct*** for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility; [and]

(B) voluntary termination or withdrawal from criminal conduct or associations.

*Id.* (emphasis added.)  Further guidance is set forth in Section 1B1.3 and the commentary to that

section.  Section 1B1.3(a) states in part:

> Unless otherwise specified, . . . (iv) adjustments in Chapter Three . . . shall be
> determined on the basis of the following:
>
> > (1)(A)  all acts and omissions committed . . . or willfully caused by the
> > defendant; . . . that occurred during the commission of the offense
> > of conviction, in preparation for that offense, or in the course of
> > attempting to avoid detection or responsibility for that offense;
>
> > (2)       solely with respect to offenses of a character for which §3D1.2(d)
> > would require grouping of multiple counts, all acts and omissions
> > described in subdivisions (1)(A) and (1)(B) above that were part of
> > the same course of conduct or common scheme or plan as the
> > offense of conviction.[12]

Application Note 1 to section 1B1.3 states:

> The principles and limits of sentencing accountability under this guideline are not
> always the same as the principles and limits of criminal liability.  Under subsections
> (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the
> defendant is to be held accountable in determining the applicable guideline range,
> rather than on whether the defendant is criminally liable for an offense as a
> principal, accomplice, or conspirator.

---

[12] U.S.S.G. § 3D1.2, which is referred to in section 1B1.3(a)(2), is entitled "Groups of Closely Related Counts," and
states in relevant part:

> All counts involving substantially the same harm shall be grouped together into a single Group.
> Counts involve substantially the same harm within the meaning of this rule:
>
> . . .
>
> (d)  When the offense level is determined largely on the basis of the total amount of harm or loss,
> the quantity of a substance involved, or some other measure of aggregate harm, or if the offense
> behavior is ongoing or continuous in nature and the offense guideline is written to cover such
> behavior.

Section 3D1.2(d) provides that offenses under section 2G2.2 are to be grouped.  Section 2G2.2 includes offenses
involving the possession of material regarding the sexual exploitation of a minor.  The Government represents that
the charged offense and the offense of possession of the CDs would have been grouped if they had been charged
separately in an indictment.  (Response, ECF No. 133 at 23 n.4.)

Under section 1B1.3, therefore, a defendant need not have been charged with the additional relevant conduct. That is, conduct can be relevant to sentencing even though the conduct is not the subject of a criminal charge.

Application Note 9 to section 1B1.3 further describes the types of conduct that a court may find is "part of the same course of conduct or common scheme or plan as the offense of conviction," under section 1B1.3(a)(2):

> "Common scheme or plan" and "same course of conduct" are two closely related concepts.
>
> (A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).
>
> (B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. § 1B1.3, Application Note 9.

### C. The Parties' Arguments

Petitioner contends that counsel provided ineffective assistance when counsel failed to object to the Court's finding that Petitioner's collection of child pornography on CDs was relevant conduct. (Motion at 9-10; Sentencing Tr. at 52-53.)[13] Petitioner relies primarily on section 1B1.3(a)(2) to support the contention that possession of the CDs should not have been considered relevant conduct. (Motion at 10-13.) Petitioner contends that "[t]he offense conduct and the 16 images on the CDs bear no relation to one another, other than being classified as 'child pornography.'" (Motion at 10.) Specifically, Petitioner argues that the images on the CDs were neither part of the same course of conduct as the offense for which he was convicted, nor part of a common scheme or plan as the offense of conviction, under section 1B1.3(a)(2) . (*Id.*)

In further support of his argument, Petitioner asserts that there were no common victims between the conduct for which he was convicted and the possession of the images on the CDs. (*Id.*) He also cites the lack of common purpose or similar *modus operandi*, given that one involved a clock camera at home and the other involved downloads of images from the Internet and storage on CDs. (*Id.* at 10-11.) Petitioner contends that the time between the transfer of the images to the CDs and the charged conduct demonstrates the absence of a pattern of conduct. (*Id.* at 12-13.)

Petitioner argues that had counsel argued that Petitioner's possession of the CDs was not relevant conduct, the Court likely would have granted Petitioner a two-level credit for acceptance of responsibility. (*Id.* at 13-14.) Petitioner asserts, therefore, that the total offense level would have been 26 rather than 28, and his guidelines range would have been 63-78 months. (*Id.*) With

---

[13] The record is not clear as to whether counsel considered raising an objection that possession of other child pornography was not relevant conduct; the revised presentence investigation report states that "[t]he Probation Office wishes to preserve a possible objection to this information by the defendant."

a downward departure, Petitioner asserts that his sentence might have been reduced by nine months or more.  (*Id.* at 14.)  He thus argues that counsel was deficient for failing to make the argument that the possession of the CDs was not relevant conduct for sentencing purposes.  (*Id.* at 10-13.)[14]

The Government argues that Petitioner "myopically focuses on § 1B1.3(a)(2)," and particularly on whether the conduct at issue, for purposes of acceptance of responsibility, was "part of the same course of conduct or common scheme or plan," pursuant to section 1B1.3(a)(2).  (Response at 23.)  The Government asserts that the Court had the authority under section 1B1.3(a)(1)(A) to deny Petitioner credit for acceptance of responsibility because section 1B1.3(a)(1)(A) includes "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction."  (*Id.*)

Alternatively, the Government maintains that the conduct should be considered relevant conduct under section 1B1.3(a)(2), because it was either part of a common scheme or plan or part of the same course of conduct.  The Government argues that the collection of the CDs was part of the same course of conduct as the charged offense because (1) the offenses were similar in that both involved the possession of child pornography and both involved girls in their early teens; (2) both offenses involved repetitious exploitation given that Petitioner searched for pornography numerous times in 2004 and/or 2005, he created CDs on four different occasions, and he possessed the CDs when he was repeatedly exploiting his step-daughter; and (3) because he possessed the CDs at the same time he committed the charged offense, Petitioner's collection of the CDs was not remote in time to his exploitation of his step-daughter.  (*Id.* at 24-26.)  The Government argues

---

[14] Petitioner also contends that although the Court found that some of the non-pornographic images on the CDs depicted young teenage girls, the Court did not make similar findings regarding the 16 images of child pornography on the CDs.  (Motion at 10 n.6.)  Petitioner argues: "To the extent defense counsel could have presented evidence that the 16 images were different in kind from the videos of [Petitioner's] step-daughter, and involved entirely different imagery of different victims, his failure to do so was likewise ineffective."  (*Id.*)  This argument is unsupported by the record, as the Court found that "the images of child pornography were confined to images, by and large, of individuals who were young – in their young teens."  (Sentencing Tr. at 53-54.)

16

that the collection of the CDs and the charged offense were part of a common scheme or plan because they both involved Petitioner as a single common offender, the use of a computer as a single *modus operandi*, and the exploitation of children for sexual gratification as a single common purpose.[15]  (*Id.* at 26-27.)

In Petitioner's reply, he argues that to be considered relevant conduct for purposes of acceptance of responsibility, the conduct must have occurred after Petitioner became aware that the federal investigation had started.  (Reply at 4.)  He contends that the conduct was not relevant because his possession of the CDs began in 2009 and ended when he moved out of the house in September 2010, and, therefore, the conduct occurred before the investigation started in January 2011.  (*Id.* at 4-5.)

### D.  Analysis

As the Court observed at sentencing, Petitioner affirmatively stated in his sentencing memorandum that he possessed no child pornography other than the videos and images that formed the basis for his conviction.  (Sentencing Tr. at 53.)  Although Petitioner did not testify explicitly that he was unaware that he had downloaded child pornography in his search for adult pornography, because the argument was not inconsistent with his prior statements, counsel made the argument at the sentencing hearing.

Contrary to Petitioner's contention, Petitioner's possession of the child pornography on the CDs is relevant conduct for purposes of determining whether Petitioner's denial, at sentencing, of that conduct made him undeserving of a reduction in his offense level for acceptance of

---

[15] The Government also asserts that Petitioner's possession of the CDs, after he was out on bail following his federal indictment, was in itself a federal crime and a violation of Petitioner's release conditions.  (Response at 22 n.3.)  Petitioner alleges in his reply that because he was not living in his former house when he was indicted and on bail in October and November of 2011, he was not in possession of the CDs during the bail period, and thus he was not in violation of his bail conditions.  (Reply at 3.)  For the reasons explained below, Petitioner's conduct is relevant, and, therefore, the Court need not address the bail issue.

responsibility.   The conduct is relevant under section 1B1.3(a)(1)(A) because Petitioner's continuing possession of the CDs, from the time he downloaded the images in 2004 or 2005 until he moved out of the house in 2010, was an act committed during Petitioner's commission of the charged offense in 2009.

The conduct is also relevant under section 1B1.3(a)(2) because the conduct was "part of the same course of conduct or common scheme or plan as the offense of conviction."   First, the offenses are similar in that both involved child pornography in which the victims were of similar ages.   Second, given that Petitioner created four separate CDs which contained child pornography that was downloaded on multiple occasions, and that Petitioner possessed the CDs from the date of their creation through the time that he created the videos, the creation of the CDs and the creation of the videos involved repetitive similar conduct.   Third, the offenses were contemporaneous, insofar as at the time Petitioner committed the crime of conviction, he possessed the CDs.   *See United States v. McVey*, 752 F.3d 606, 611-12 (4th Cir. 2014) (holding that the defendant's possession and distribution of child pornography were the same course of conduct, based on the similarity of the offenses, their regularity, the lack of any lapse of time between them, their commonality of purpose, their common offender, and their common *modus operandi*); *United States v. Nance*, 611 F.3d 409, 416-17 (7th Cir. 2010) (holding that possession of child pornography at the time of the offense of conviction was relevant conduct for sentencing purposes).

Furthermore, although there were no victims in common, because the conduct involved the use of a computer (*i.e.*, the same *modus operandi*), one can reasonably infer that Petitioner possessed the CDs for the same prurient purpose for which he possessed the videos and images of his step-daughter.   *See United States v. Rivera-Moreno*, 613 F.3d 1, 7 (1st Cir. 2010) (noting, in

18

the context of determining drug quantity, "the court is entitled to draw reasonable inferences from information contained in the sentencing record") (quotation marks omitted); *United States v. Sullivan*, 414 F. App'x 477, 480 (3d Cir. 2011) (unpublished) (holding that possession of child pornography was relevant conduct for purposes of sentencing following a conviction for distribution of child pornography, based in part on findings that both offenses had a common prurient purpose and similar *modus operandi* in the use of the computer).[16]

Petitioner's argument that his possession of the CDs is not relevant conduct for sentencing purposes because it occurred before the investigation started fails. Although Petitioner's possession of the CDs began before the start of the investigation of the offense of conviction, the possession was ongoing, and coincided with the offense for which Petitioner was convicted. When Petitioner falsely denied responsibility for his possession of the CDs during sentencing, the Court properly denied credit for acceptance of responsibility based on Petitioner's false denial of relevant conduct.

Given that Petitioner's possession of the CDs constituted relevant conduct for purposes of the Court's analysis of the issue of acceptance of responsibility, counsel was not deficient, nor was Petitioner prejudiced, for counsel's failure to argue to the contrary. *See Tse*, 290 F.3d at 465.

---

[16] Petitioner attempts to draw similarities between his case and *United States v. Teuschler*, 689 F.3d 397, 400 (5th Cir. 2012), but that case is distinguishable. (Motion at 11.) In *Teuschler*, the Fifth Circuit held that the district court erred in finding that the defendant's possession of additional child pornography images was "relevant conduct" under section 1B1.3(a)(1)(A), for purposes of imposing a sentencing enhancement. In *Teuschler*, however, there was no evidence that the defendant possessed the additional images when he committed the offense of conviction. *See id. Teuschler*, therefore, is not helpful to Petitioner, whose possession of the CDs was ongoing when he committed the offense of conviction. Petitioner's reliance on *United States v. Hahn*, 960 F.2d 903, 911 (9th Cir. 1992) is also misplaced; in *Hahn*, the Court vacated a sentence for a drug and firearms offense and remanded the action for the district court to consider whether there was sufficient similarity, regularity, and temporal proximity between the offense of conviction and the prior relevant drug offense conduct, given a five-month gap between them. *Id.* In Petitioner's case, in contrast, the ongoing possession of the CDs occurred at the same time as the offense of conviction, the offenses were similar, and the possession of the CDs involved repetitive conduct.

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  The recommendation is that the Court deny Petitioner's section 2255 motion, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 25th day of June, 2015.